UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| TAMMY ROBINSON,<br><br>    Plaintiff,<br><br>v.<br><br>TRANS UNION LLC, and NATIONSTAR MORTGAGE LLC,<br><br>    Defendants. | Civil Action: 3:22-cv-776<br><br>With Jury Demand Endorsed |

## COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

Plaintiff, Tammy Robinson ("Plaintiff"), by and through counsel, for her Complaint against Defendants, Trans Union LLC, and Nationstar Mortgage LLC, jointly, severally, and in solido, states as follows:

### I. INTRODUCTION

1.  One of the Defendants, Trans Union LLC, is a consumer reporting agency ("CRA") as defined by 15 U.S.C. § 1681a(f), and Defendant, Nationstar Mortgage LLC is a furnisher of consumer information. All Defendants have violated 15 U.S.C. § 1681 *et seq.*, known as the Fair Credit Reporting Act (the "FCRA"). Plaintiff seeks to recover from Defendants actual, statutory, and punitive damages, injunctive relief, legal fees, and expenses.

### II. PARTIES

2.  Plaintiff, Tammy Robinson, is a natural person residing in Saint Louis County,

Missouri, is a "consumer," as defined by the FCRA, 15 U.S.C. § 1681a(c), and is a victim of repeated false credit reporting.

**Made Defendants herein are**:

3. Upon information and belief, Defendant Trans Union LLC, which may also hereinafter be referred to as "Trans Union", "Defendant," "Defendants," "CRA," "CRA Defendant," or "CRA Defendants" is an Illinois limited liability company that does business in this judicial district and may be served by delivering a summons to its headquarters, 555 West Adams Street, Chicago, Illinois 60681. Trans Union is a nationwide CRA as defined by 15 U.S.C. § 1681a(f). Trans Union regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purposes of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties. Trans Union disburses such consumer reports to third parties of contract for monetary compensation.

4. Upon information and belief, Defendant Nationstar Mortgage, LLC or Mr. Cooper, which may also hereinafter be referred to as "Nationstar," "Defendant," "Defendants," "Furnisher Defendant," or "Furnisher Defendants," is a Delaware limited liability company that does substantial business in this judicial district and may be served by delivering a summons to its Legal Department at its headquarters, 8950 Cypress Waters Blvd., Coppell, Texas 75019. Nationstar is a "person," as defined by the FCRA, 15 U.S.C. § 1681a(b), and a furnisher of consumer credit information to consumer reporting agencies.

5. As used herein, "consumer reporting agency," or "CRA," means any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in

the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports (commonly referred to as "credit reports") to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports and is an entity in the business of collecting, maintaining and disseminating information regarding the credit-worthiness of individuals. CRAs specifically include, but are not limited to, Equifax, Experian, TransUnion, and Innovis.

### III. JURISDICTION AND VENUE

6. Plaintiff respectfully asserts that this Honorable Court has jurisdiction in this case arises under federal law. 28 U.S.C. § 1331, 1334, and 1367 and 15 U.S.C. § 1681(p). Plaintiff also asserts actions under states' laws which may be brought within the supplemental jurisdiction of this Court and Plaintiff respectfully requests that this Honorable Court exercise supplemental jurisdiction over said claims. 28 U.S.C. § 1367.

7. Venue is proper in this District, because the CRA Defendant and Nationstar transact business in this District. Nationstar's headquarters is located in this judicial district, a substantial part of the conduct complained of occurred in this district, and various actions made basis of Plaintiffs' claims against Defendants occurred in the Northern District of Texas as further described. 28 U.S.C. § 1391.

8. Venue is further proper in this District, because the CRA Defendant entered into agreements with Nationstar in this judicial district to receive credit reporting data concerning Plaintiff. Any and all requests to investigate Plaintiffs' dispute sent from the CRA Defendant as part of their reinvestigation was submitted to Nationstar's headquarters and investigated by the furnisher

Nationstar using Nationstar's resources located at or closely connected to this judicial district. Nationstar managed Plaintiffs' mortgage from this judicial district including communicating amounts owed and conducting numerous communications via phone and letter.

## IV.  FACTUAL ALLEGATIONS

9. In or around February 2006, the Plaintiff secured a mortgage for her home at 7213 Arsenal St., Saint Louis, Saint Louis County, Missouri 63143.

10. Plaintiff's secured mortgage loan was later was consigned, placed, sold, assigned or otherwise transferred to Nationstar, and Nationstar assigned a loan number of 62142XXXX (hereinafter, "Nationstar Mortgage").

11. On or around September 21, 2017, Plaintiff filed for Bankruptcy Protection under Chapter 13 of Title 11.

12. A redacted copy of Plaintiff's Chapter 13 Docket Report is attached hereto as Exhibit "A".

13. On May 19, 2021, Plaintiff was discharged from her Chapter 13 Bankruptcy and excepted from discharge Plaintiff's residential home mortgage—the Nationstar mortgage.

14. A redacted copy of Plaintiff's Chapter 13 Discharge Order is attached hereto as Exhibit "B" and incorporated herein by reference.

15. A redacted copy of Plaintiff's Chapter 13 Plan is attached hereto as Exhibit "C" and incorporated herein by reference.

16. Pursuant to Plaintiff's Chapter 13 Plan, Plaintiff was current on mortgage payments for Plaintiff's residential home mortgage—the Nationstar mortgage—and there were no arrears for

the Nationstar mortgage.

17. Read in concert, Sections 1322(a)(2), 1322(b)(5), and 1328(a)(1) of the Bankruptcy Code, bar discharging home mortgage debts in a chapter 13 bankruptcy.

18. On December 18, 2020, Diana S. Daugherty, the Trustee for the Chapter 13 Bankruptcy, sent a Notice of Final Cure Payment with a Certificate of Service to US Bank NA Trustee c/o Nationstar and directly to Nationstar.

19. A redacted copy of Plaintiff's Chapter 13 Standing Trustee's Notice of Final Cure Payment with a Certificate of Service is attached hereto as Exhibit "D" and incorporated herein by reference.

20. On December 23, 2020, US Bank N.A. and/or Nationstar filed a Response to Notice of Final Cure Payment.

21. A redacted copy of US Bank N.A. and/or Nationstar's Response to Notice of Final Cure Payment is attached hereto as Exhibit "E" and incorporated herein by reference.

22. Throughout Plaintiff's chapter 13 bankruptcy, under direct or indirect order from the bankruptcy trustee, timely monthly mortgage payments were made to the Nationstar mortgage account.

23. Pursuant to US Bank N.A. and/or Nationstar Response to Notice of Final Cure Payment, as of December 23, 2020, Plaintiff was "current with all postpetition payments consistent with § 1322(b)(5) of the Bankruptcy Code, including all fees, charges, expenses, escrow, and costs."

24. Plaintiff still lives in the home and continues to make timely mortgage payments to Nationstar mortgage.

25. Plaintiff affirmatively states she has never filed chapter 7 bankruptcy.

26.     A redacted copy of a Pacer.gov case locator search results for bankruptcy filings using Plaintiff's Social Security Number is attached hereto as Exhibit "F" and incorporated herein by reference.

Credit Reporting

27.     Sometime in October of 2021, Plaintiff pulled her credit reports and noticed that inaccurate information was reporting.

28.     A redacted copy of Plaintiff's October 2021 Tri-Merge Credit Report, which includes Plaintiff's Trans Union, Equifax, and Experian credit reports, is attached hereto as Exhibit "G" and incorporated in by reference.

29.     Within the Tri-Merge credit report, Plaintiff noticed that Trans Union inaccurately reported the Nationstar Mortgage with an Account Rating of "Derogatory", with a Payment Status of "Wage Earner Plan", Creditor Remarks of "Chapter 13; wage earner plan account", and clearly neglected to update the reporting of the Nationstar mortgage after Plaintiff's chapter 13 bankruptcy was discharged on May 19, 2021.

30.     This reporting is incorrect because Plaintiff completed the required payments through Plaintiff's chapter 13 bankruptcy, was successfully discharged, excepted her residential home mortgage debt from being discharged, continued making payments on the same mortgage loan account because it was still open following the bankruptcy discharge.[1]

31.     Metro 2 guidelines require furnishers and/or credit reporting agencies to update the

---

[1] The Consumer Data Industry Association's Metro 2 reporting standards specifically instruct consumer reporting agencies to remove any bankruptcy references or suppression codes associated with bankruptcy reporting so that ongoing payments made by the consumer can be reported.

reporting of an account when the borrower associated to the account filed chapter 13 bankruptcy by first updating the Consumer Information Indicator ("CII") to "D", and then continuing to furnish the monthly payment history information with a value of "D". Once a consumer is discharged, Metro 2 reporting standards specifically instruct furnishers and/or consumer reporting agencies to remove any referencing to a chapter 13 bankruptcy and suppression codes associated with bankruptcy reporting by submitting a CII code of "Q". In following these simple Metro 2 guidelines, which are well regarded as the industry standards, it prevents the reporting of any late payment history during the pendency of a consumer's chapter 13 bankruptcy, and then continued reporting once a consumer is discharged.

32. Metro 2 guidelines have been adopted by Trans Union as the industry standards, and these industry standards are followed by both furnishers and Trans Union.

### Credit Reporting Dispute Letters and Reinvestigation Requests

33. On or about November 16, 2021, Plaintiff disputed the reporting of the Nationstar Mortgage account with CRA Defendant Trans Union directly. Plaintiff requested that under the FCRA, the CRA Defendant conduct a reasonable investigation and/or remedy the inaccuracies on Plaintiff's credit reports concerning the Nationstar Mortgage account.

34. A redacted copy of Plaintiff's unsigned dispute letter sent to Trans Union is attached as Exhibit "H" and incorporated in by reference.

35. Trans Union received Plaintiff's dispute letter on November 30, 2021

36. A copy of the United States Postal Service tracking history is attached hereto as Exhibits "I".

37. Trans Union never responded to Plaintiff's dispute letter despite the USPS Tracking

receipt showing that Trans Union receipt showing that Trans Union received the dispute letter on November 30, 2021.  *See* Exhibit "I"

38.  On or around February 8, 2022, Plaintiff elected to obtain a new copy of her credit report due to Trans Union's non-response to her November 2021 Dispute Letter.

39.  A redacted copy of Plaintiff's February 8, 2022 Tri-Merge Credit Report, which that contained Plaintiff's Trans Union credit report is attached hereto as Exhibit "J" and incorporated in by reference.

40.  Within the February 8, 2022 Tri-Merge Credit Report, Plaintiff noticed that Trans Union was still inaccurately reporting the Nationstar Mortgage account.  Trans Union was reporting the Nationstar Mortgage with an Account Rating of "Derogatory", with a Payment Status of "Unknown", and Creditor Remarks of "Chapter 7 bankruptcy".

41.  This reporting is still incorrect because Plaintiff completed the required payments through Plaintiff's chapter 13 bankruptcy, which was never converted to a chapter 7 bankruptcy, and Plaintiff's chapter 13 bankruptcy was successfully discharged after she excepted her residential home mortgage debt from being discharged, continued making payments on the same mortgage loan account because it was still open following the bankruptcy discharge.[2]

42.  Plaintiff has never filed chapter 7  bankruptcy. *See* Exhibit "F".

43.  Metro 2 guidelines require an update to the reporting of a mortgage account when the borrower associated to the account files chapter 13 bankruptcy by first updating the Consumer

---

[2] The Consumer Data Industry Association's Metro 2 reporting standards specifically instruct consumer reporting agencies to remove any bankruptcy references or suppression codes associated with bankruptcy reporting so that ongoing payments made by the consumer can be reported.

Information Indicator ("CII") to "D", and then continuing to furnish the monthly payment history information with a value of "D". Once a consumer is discharged, Metro 2 reporting standards specifically instruct the removal of any referencing to a chapter 13 bankruptcy and suppression codes associated with bankruptcy reporting by submitting a CII code of "Q". In following these simple Metro 2 guidelines, which are well regarded as the industry standards, it prevents the reporting of any late payment history during the pendency of a consumer's chapter 13 bankruptcy, and then continued reporting once a consumer is discharged.

44. Metro 2 guidelines have been adopted by Trans Union as the industry standards, and these industry standards are followed by both furnishers and Trans Union.

45. Trans Union's response, or lack thereof, was not the result of a reasonable investigation into Plaintiff's dispute and failed to remedy the inaccuracies within the Nationstar tradeline and gave no explanation as to why the Nationstar tradeline was reported as in Chapter 7 bankruptcy.

46. Trans Union's did not assure the maximum possible accuracy of information relating to Plaintiff because it failed to convey the positive credit history Plaintiff established with the Nationstar mortgage account prior to the instant dispute.

47. Plaintiff's inaccurate Trans Union consumer report was disseminated to third parties before and/or after the instant dispute

48. Trans Union chose to "verify" false information from an unreliable source, failed to correct the inaccurate information, and continued to publish the inaccurate information regarding Plaintiff's Nationstar account.

49. Upon the Plaintiff's request to Trans Union for verification and addition regarding

the Nationstar mortgage account, and in accordance with Trans Union's standard procedures, Trans Union did not evaluate or consider any of Plaintiff's information, claims or evidence and did not make any attempt to substantially or reasonably verify the Nationstar tradeline.

50. In the alternative, Trans Union failed to contact Nationstar, therefore, failed to perform any investigation at all.

51. In the alternative to the allegation that Trans Union failed to contact Nationstar, it is alleged that Trans Union did forward some notice of the dispute to Nationstar, and Nationstar failed to conduct a lawful investigation.

## V.  GROUNDS FOR RELIEF

### COUNT I – TRANS UNION'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681e(b))

52. The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

53. Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning the Plaintiff.

54. The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible **accuracy** of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b) (emphasis added).

55. Trans Union knew or should have known of Plaintiff's account status and bankruptcy history, but Trans Union continued to prepare a patently false consumer report concerning Plaintiff.

56. Despite actual and implied knowledge that Plaintiff's credit report was and is not

accurate, Trans Union readily provided false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately Plaintiff's creditworthiness.

57. After Trans Union knew or should have known Plaintiff's account status and bankruptcy history were inaccurate, it failed to make the corrections.

58. As a result of Trans Union's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to: loss in Plaintiff's ability to finance goods; loss of credit, loss of the ability to purchase and benefit from credit; emotional anguish, frustration, and annoyance from being deterred from applying for credit; mental anguish, humiliation, anger, frustration, annoyance, and embarrassment as a result of the publication of false information; lost credit capacity and decreased credit scores; damage to reputation; mental anguish, emotional distress, frustration, humiliation, and annoyance as a result of being burdened with a false credit reporting history; lost opportunities to obtain credit in the form of an unspecified number of credit offers that Plaintiff did not receive because of the false and derogatory information contained in Plaintiff's credit report; Plaintiff's lowered credit score may have impacted the interest rates Plaintiff has on current loans; Plaintiff's lowered credit score may have impacted the interest rates Plaintiff received during this ordeal; Plaintiff's lowered credit score may have impacted the credit limits Plaintiff has on existing accounts; Plaintiff's spent considerable time, effort, and expense attempting to force Defendant to comply with Defendant's statutory obligations, including but not limited to reviewing information online, telephone calls, emails, writing letters, sending letters, and attempting to decipher letters, reports, and other instruments provided by Defendant; loss of self-esteem because of Defendant's continued persistence in painting Plaintiff in a false light both personally and financially; anxiety when considering seeking additional credit because Plaintiff believes Plaintiff will be forced to be

subjected to the humiliation of having to explain the false and defamatory information; and the costs and time Plaintiff has spent trying to repair Plaintiff's credit in light of the damage done to it continuously by Defendant.

59. Trans Union's conduct, action, and inaction, were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 168ln. In the alternative, such conduct, action, and inaction were negligent, entitling the Plaintiff to recover under 15 U.S.C. § 1681o.

60. The Plaintiff is entitled to recover costs and attorney's fees from Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

### COUNT II – TRANS UNION'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681i)

61. The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

62. Trans Union violated 15 U.S.C. § 1681i on multiple occasions by failing to update or delete inaccurate information in the Plaintiff's credit file after receiving actual notice of such inaccuracies, failing to conduct a lawful reinvestigation, failing to forward all relevant information to furnisher(s), failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit file, and relying upon verification from a source it has reason to know is unreliable.

63. As a result of Trans Union's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to: loss in Plaintiff's ability to finance goods; loss of credit, loss of the ability to purchase and benefit from credit; emotional anguish, frustration, and annoyance from being deterred from applying for credit; mental anguish, humiliation, anger, frustration, annoyance, and embarrassment as a result of the publication of false information; lost credit capacity

and decreased credit scores; damage to reputation; mental anguish, emotional distress, frustration, humiliation, and annoyance as a result of being burdened with a false credit reporting history; lost opportunities to obtain credit in the form of an unspecified number of credit offers that Plaintiff did not receive because of the false and derogatory information contained in Plaintiff's credit report; Plaintiff's lowered credit score may have impacted the interest rates Plaintiff has on current loans; Plaintiff's lowered credit score may have impacted the interest rates Plaintiff received during this ordeal; Plaintiff's lowered credit score may have impacted the credit limits Plaintiff has on existing accounts; Plaintiff's spent considerable time, effort, and expense attempting to force Defendant to comply with Defendant's statutory obligations, including but not limited to reviewing information online, telephone calls, emails, writing letters, sending letters, and attempting to decipher letters, reports, and other instruments provided by Defendant; loss of self-esteem because of Defendant's continued persistence in painting Plaintiff in a false light both personally and financially; anxiety when considering seeking additional credit because Plaintiff believes Plaintiff will be forced to be subjected to the humiliation of having to explain the false and defamatory information; and the costs and time Plaintiff has spent trying to repair Plaintiff's credit in light of the damage done to it continuously by Defendant.

64. Trans Union's conduct, action, and inaction, were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, such conduct, action, and inaction were negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

65. The Plaintiff is entitled to recover costs and attorney's fees from Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

## COUNT IX – NATIONSTAR'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681s-2(b))

66. Defendant Nationstar violated 15 U.S.C. § 1681s-2(b) by failing to conduct reasonable investigations upon receiving notice of Plaintiff's dispute(s) from one or more consumer reporting agencies, and/or failing to appropriately report the results of their investigations, and/or failing to appropriately modify the information.

67. Nationstar further violated 15 U.S.C. § 1681s-2(b) by continuing to report the Nationstar mortgage within Plaintiff's credit file with the CRA Defendant without also including a notation that this debt was disputed, failing to fully and properly investigate the Plaintiff's dispute of the Nationstar mortgage, failing to accurately respond to the CRA Defendant, failing to correctly report results of an accurate investigation to every other consumer reporting agency, and failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the inaccurate information on the Nationstar mortgage account to the consumer reporting agencies.

68. As a result of Nationstar's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to: loss in Plaintiff's ability to finance goods; loss of credit, loss of the ability to purchase and benefit from credit; emotional anguish, frustration, and annoyance from being deterred from applying for credit; mental anguish, humiliation, anger, frustration, annoyance, and embarrassment as a result of the publication of false information; lost credit capacity and decreased credit scores; damage to reputation; mental anguish, emotional distress, frustration, humiliation, and annoyance as a result of being burdened with a false credit reporting history; lost opportunities to obtain credit in the form of an unspecified number of credit offers that Plaintiff did not receive because of the false and derogatory information contained in Plaintiff's credit report; Plaintiff's lowered credit score may have impacted the interest rates Plaintiff has on current loans;

Plaintiff's lowered credit score may have impacted the interest rates Plaintiff received during this ordeal; Plaintiff's lowered credit score may have impacted the credit limits Plaintiff has on existing accounts; Plaintiff's spent considerable time, effort, and expense attempting to force Defendant to comply with Defendant's statutory obligations, including but not limited to reviewing information online, telephone calls, emails, writing letters, sending letters, and attempting to decipher letters, reports, and other instruments provided by Defendant; loss of self-esteem because of Defendant's continued persistence in painting Plaintiff in a false light both personally and financially; anxiety when considering seeking additional credit because Plaintiff believes Plaintiff will be forced to be subjected to the humiliation of having to explain the false and defamatory information; and the costs and time Plaintiff has spent trying to repair Plaintiff's credit in light of the damage done to it continuously by Defendant.

69.     Nationstar's conduct, action, and inaction, were willful, rendering it liable for actual or statutory, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

## VI. VICARIOUS LIABILITY/RESPONDEAT SUPERIOR

70.     Plaintiff will be able to show, after reasonable discovery, that all actions at issue were taken by employees, agents, servants, or representatives, of any type, for Defendants, the principals, within the line and scope of such individuals' (or entities') express or implied authority, through employment, agency, or representation, which imputes liability to Defendants for all such actions under the doctrine of respondeat superior and/or vicarious liability.

## VII. DAMAGES

71. Plaintiff respectfully requests that this Honorable Court instruct the jury, as the trier of facts, that in addition to actual or compensatory damages, punitive or exemplary damages may be awarded against the Defendants under the provisions of the FCRA and/or states' laws, including Texas.

72. Plaintiff respectfully requests that this Honorable Court award Plaintiff her litigation expenses and other costs of litigation and reasonable attorney's fees incurred in this litigation, in accordance with the provisions of the FCRA and/or other laws.

73. The above and foregoing actions, inactions, and fault of Defendants, as to each and every claim, have proximately caused a wide variety of damages to Plaintiff.

74. Defendants performed perfunctory and essentially useless reinvestigations resulting in the verification of false reportings about the Plaintiff and have been a substantial factor in causing credit denials and other damages.

75. Plaintiff suffered a variety of damages, including economic and non-economic damages as prayed for herein.

76. Defendants have negligently and/or willfully violated various provisions of the FCRA and are thereby liable unto Plaintiff.

77. Defendants are liable unto Plaintiff for all actual, statutory, exemplary and punitive damages awarded in this case, as well as other demands and claims asserted herein including, but not limited to, out-of-pocket expenses, credit denials, costs and time of repairing her credit, pain and suffering, embarrassment, inconvenience, lost economic opportunity, loss of incidental time, frustration, emotional distress, mental anguish, fear of personal and financial safety and security,

attorney's fees, and court costs, and other assessments proper by law and any and all other applicable federal and state laws, together with legal interest thereon from date of judicial demand until paid.

**WHEREFORE PREMESIS CONSIDERED**, Plaintiff, Tammy Robinson, prays that this Honorable Court:

  A. Enter Judgment in favor of Plaintiff and against Defendants Trans Union LLC, and Nationstar Mortgage LLC, jointly, severally, and in solido, for all reasonable damages sustained by Plaintiff, including, but not limited to, actual damages, compensatory damages, out-of-pocket expenses, credit denials, costs and time of repairing her credit, pain and suffering, embarrassment, inconvenience, lost economic opportunity, loss of incidental time, frustration, emotional distress, mental anguish, and fear of personal and financial safety and security for Defendants' violations of the FCRA, applicable state law, and common law;

  B. Find that the appropriate circumstances exist for an award of punitive damages to Plaintiff;

  C. Award Plaintiff pre-judgment and post-judgment interest, as allowed by law;

  D. Order that the CRA Defendant Trans Union LLC, and Furnisher Defendant, Nationstar Mortgage LLC, work in conjunction, cooperatively, and/or individually to reinvestigate and correct the consumer report(s), credit report(s), data emanations, consumer histories, and credit histories of and concerning Plaintiff and/or any of Plaintiff's personal identifiers.

  E. Grant such other and further relief, in law or equity, to which Plaintiff might show she is justly entitled.

Date Filed: <u>April 6, 2022</u>

                                          Respectfully submitted,

                                          <u>*/s/ Bryan Warrick*</u>
                                          Bryan Warrick
                                          TX State Bar Number 24058778
                                          FCRA-TX@fieldslaw.com
                                          FIELDS LAW FIRM
                                          9999 Wayzata Blvd.
                                          Minnetonka, Minnesota 55305
                                          (612) 383-1111 (telephone)
                                          (612) 370-4256 (fax)

                                          **LAW OFFICE OF JONATHAN A. HEEPS**

                                          <u>/s/ *Jonathan A. Heeps*</u>.
                                          Jonathan A. Heeps
                                          State Bar No. 24074387
                                          LAW OFFICE OF JONATHAN A. HEEPS
                                          Post Office Box 174372
                                          Arlington, Texas 76003
                                          Telephone (682) 738-6415
                                          Fax (844) 738-6416
                                          jaheeps@heepslaw.com

                                          COUNSEL FOR PLAINTIFF

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

| | |
|---|---|
| April 6, 2022 | /s/ Bryan Warrick |
| Date | Bryan Warrick |